**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

**v.** **CASE NO.: 3:26mj250/MJF**

**GREGORY CAMPBELL**
_________________________________/

# AFFIDAVIT

Your affiant, Bryan A. Barton, being duly sworn, deposes and states the following:

## INTRODUCTION AND AGENT BACKGROUND

1. Your affiant is a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Pensacola Field Office, and has served in that capacity since 2025. Your affiant is also a Special Agent with the Florida Department of Law Enforcement (FDLE) and has been so employed since May 2024. Prior to this employment, your affiant was employed as a deputy and an investigator with the Escambia County Sheriff's Office between May 2012 and May 2024.

2. Your affiant has participated in investigations of individuals who have violated state and Federal laws, particularly those laws found in Titles 18 and 21 of the United States Code. Your affiant has conducted and participated in ATF controlled operations where confidential informants and undercover agents were



RCVD USDC FLND PN
JUL 27 '26 PM12:03

utilized to purchase firearms and narcotics. Your affiant has conducted and participated in surveillance operations that yielded information pertaining to firearms and narcotics laws violators. Your affiant has written search warrant affidavits and obtained search warrants for, among other things, residences, electronic devices, social media user accounts, and information pertaining to the location of cellular telephones. Your affiant has participated in the execution of search warrants wherein firearms, ammunition, large amounts of narcotics, currency, tools, paraphernalia, and records of firearms and narcotics trafficking have been recovered. Your affiant has conducted and participated in the arrests of firearms and narcotics law violators. Your affiant has had conversations with other experienced agents regarding illicit firearms possession and narcotics trafficking activities, and the many different enforcement methods used to combat firearms and narcotics law violators

3. This affidavit is made in support of a Criminal Complaint against Gregory Campbell **(CAMPBELL)** for violations of Title 18, United States Code Section 922(g) (Possession of a Firearm by a Convicted Felon) and Title 21, United States Code, Section 841 (Possession with Intent to Distribute a Controlled Substance), within the Northern District of Florida.

4. Your affiant has not included each and every fact your affiant knows about the target(s) of this investigation, or the conduct described herein. Rather, your

affiant has included only those facts your affiant believes are needed to demonstrate probable cause for the warrant sought. The information in this affidavit is based on my personal knowledge and observations, on information conveyed to me by other law enforcement officials or confidential informant(s), and based upon my review of records, recordings, documents, and other physical evidence related to the activities described herein.

## RELEVANT FACTS OF THE INVESTIGATION

5. Your affiant is conducting an investigation of **CAMPBELL** and his alleged possession of firearms and involvement in the distribution of narcotics in Pensacola, Florida.

6. **CAMPBELL** has been convicted by the State of Florida of multiple felony offenses, including but not limited to, Robbery in 1988, Trafficking in Cocaine in 1991, Introduction of Contraband into a Correctional Facility in 1992, Possession of Cocaine in 1996, Fleeing to Elude, Trafficking in Cocaine, and Conspiracy to Traffic Cocaine 5 kilograms or more in 2005.

7. In February 2026, your affiant interviewed an FDLE documented Confidential Source (CS), who provided information regarding the narcotics distribution efforts of **CAMPBELL**. The CS's information indicated that **CAMPBELL** was actively selling narcotics to include cocaine, fentanyl, and methamphetamine from a white metal shed located behind the primary residence of

701 Smiley Avenue (hereinafter referred to as the "Target Residence"), and that the CS had previously purchased narcotics from **CAMPBELL** at the Target Residence on prior occasions. Additionally, the CS indicated that **CAMPBELL** was also in possession of multiple firearms that were hidden throughout the structure. Your affiant queried law enforcement databases and was able to positively identify **CAMPBELL** and verify **CAMPBELL's** identity with the CS. Additionally, your affiant reviewed **CAMPBELL's** criminal history, which included nine (9) felony convictions, prohibiting him from possessing firearms.

8. In March 2026, your affiant along with members of FDLE, ATF, Escambia County Sheriff's Office (ECSO), and Pensacola Police Department (PPD) planned and executed a controlled purchase of fentanyl and methamphetamine from **CAMPBELL** at the Target Residence. An FDLE documented CS was driven to the Target Residence by an FDLE special agent acting in an undercover capacity (UC). Upon arrival at the Target Residence, the CS contacted **CAMPBELL** inside and exchanged a quantity of FDLE Investigative and Expenditures (I&E) funds for a quantity of methamphetamine and a quantity of fentanyl. After the transaction, the CS was driven to a predetermined location by the UC and provided your affiant with the purchased narcotics. The CS confirmed that the narcotics were purchased from **CAMPBELL** and indicated that during the transaction, they noticed a handgun on the bed within reach of **CAMPBELL**. The CS indicated that this is the same firearm

that is always present when visiting **CAMPBELL**. This transaction was audio/video recorded and monitored by law enforcement during the operation. The narcotics from this operation field tested positive for the presence of fentanyl and methamphetamine respectively and were submitted to the Drug Enforcement Administration (DEA) laboratory for further testing

9. In April 2026, your affiant along with members of FDLE, ATF, ECSO, and PPD planned and executed a controlled purchase of fentanyl from **CAMPBELL** at the Target Residence. An FDLE documented CS was driven to the Target Residence by an FDLE special agent acting in a UC. Upon arrival at the Target Residence the CS contacted Lauren Michelle Key (KEY), a long-term girlfriend of **CAMPBELL. CAMPBELL** was present during this transaction; however, he was asleep in the same room that the transaction took place, and the transaction was completed by KEY. The CS exchanged a quantity of FDLE I&E funds for a quantity of fentanyl. After the transaction, the CS was driven to a predetermined location by the UC and provided your affiant with the purchased narcotics. The CS confirmed that the narcotics were purchased from KEY and indicated that during the transaction, they noticed two (2) handguns on a table near the entrance of the residence. This transaction was audio/video recorded and monitored by law enforcement during the operation. The narcotics from this operation field tested

positive for the presence of fentanyl and were submitted to the DEA laboratory for further testing.

10. In July 2026, your affiant along with members of FDLE, ATF, ECSO, and PPD planned and executed a controlled purchase of fentanyl and methamphetamine from **CAMPBELL** at the Target Residence. An FDLE documented CS drove to the Target Residence while under constant visual surveillance. Upon arrival at the Target Residence the CS contacted **CAMPBELL** inside and exchanged a quantity of FDLE I&E funds for a quantity of methamphetamine and a quantity of fentanyl. After the transaction, the CS drove to the predetermined location while under constant visual surveillance and provided your affiant with the purchased narcotics. The CS confirmed that the narcotics were purchased from **CAMPBELL** and indicated that they noticed two (2) handguns on the bed within reach of **CAMPBELL** during the transaction. This transaction was audio/video recorded and monitored by law enforcement during the operation. The narcotics from this operation field tested positive for the presence of fentanyl and methamphetamine, respectively, and were submitted to the DEA laboratory for further testing.

11. Prior to each operation the CS was searched for contraband by law enforcement and was searched again after each transaction. Additionally, the vehicles used to transport the CS were searched before and after each operation.

12. Given the close proximity of the firearm to **CAMPBELL** and the narcotics during the controlled purchase operations, along with the firearm being so openly visible, your affiant had reason to believe that **CAMPBELL** was keeping the firearms as protection in furtherance of his narcotic distribution efforts.

13. Within the last week, your affiant was contacted by the CS and informed that **CAMPBELL** was traveling to an unknown city in Texas to meet with a source of supply. Your affiant knows through knowledge of this investigation that **CAMPBELL** has family in the area of Houston, Texas. Your affiant also knows through training and experience that Houston is a source city for cocaine, methamphetamine, and fentanyl.

14. On July 22, 2026, the CS notified your affiant that he spoke to **CAMPBELL** on the telephone. **CAMPBELL** indicated to the CS that he did not travel all the way to Texas, but rather that he met with a source of supply in Louisiana and that he had already returned to the Target Residence. **CAMPBELL** indicated to the CS that he returned with a quantity of cocaine and a quantity of fentanyl.

15. On July 23, 2026, your affiant submitted a federal search warrant for the Target Residence. That warrant was signed by the Honorable Zachary Bolitho on the morning of July 24, 2026 and executed by law enforcement later that afternoon.

16. During the execution of the search warrant KEY was located inside the Target Residence. **CAMPBELL** exited the primary residence and approached law enforcement as the shed was being secured.

17. The following items were located during the search of the Target Residence:

- Approximately 52 grams of suspected synthetic marijuana;
- Approximately 1 gram of suspected fentanyl;
- Two rounds of 9mm ammunition;
- Multiple scales, vacuum seal bags, sandwich bags and other items indicative of the sale of narcotics; and
- A television was also located on the wall acting as a monitor for a surveillance system that was streaming multiple views of the immediate area surrounding the Target Residence.

18. **CAMPBELL** was read his *Miranda* warnings and agreed to speak with your affiant. While **CAMPBELL** was being evasive during questioning, he denied ownership or residency of the Target Residence, the primary residence, or any control of the several vehicles located on the property.

19. Your affiant spoke with Charlene Rome (ROME), **CAMPBELL's** sister, who claimed to be the resident of the primary residence. This residency was confirmed through law enforcement databases. ROME confirmed that **CAMPBELL**

did not reside at the primary residence and stated that he was living in the Target Residence. ROME also stated that the vehicles parked behind the primary residence were abandoned. ROME provided your affiant and law enforcement consent to search the primary residence and the abandoned vehicles on the property.

20. During a search of the primary residence, law enforcement discovered the following items located in a bedroom belonging to **CAMBELL's** son, Tristian Salter (SALTER):

- A quantity of suspected cocaine.
- A quantity of suspected marijuana.

21. Law enforcement also searched an unlocked red Dodge Charger with no tag, which was parked directly in front of the Target Residence. The following items were located inside:

- Approximately 328 grams of suspected cocaine;
- Approximately 234 grams of suspected fentanyl;
- Approximately 238 grams of suspected methamphetamine;
- A Sarsilmaz SAR9 9mm handgun and a magazine with several rounds of 9mm ammunition; and
- A United States Birth Certificate and several United States District Court documents bearing **CAMPBELL's** name.

## CONCLUSION

22. Based upon the above facts, your affiant believes probable cause exists that **CAMPBELL** violated Title 18, United States Code Section 922(g) (Possession of a Firearm by a Convicted Felon) and Title 21, United States Code, Section 841 (Possession with Intent to Distribute a Controlled Substance) within in the Northern District of Florida.

/s/ Bryan A Barton

Bryan A. Barton
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on this ___ day of July 2026, in Pensacola, Florida, in that the above affiant attested to and submitted the contents of the foregoing written affidavit via reliable electronic means.

/s/ Michael J. Frank

MICHAEL J. FRANK
U.S. Magistrate Judge